Tuuney, J.,
delivered the opinion of the Court.
The decree of the Chancellor is erroneous. The facts necessary to be noticed are: In 1861 the complainant held a note on defendant Luster for the sum of seven hundred and forty-three dollars and five cents, bearing interest at the rate of ten per cent., due 2d January, 1861; the date of the note does not appear, but from the proof in the record, it had been executed a considerable length of time prior to its maturity. To induce defendant Abijah Scruggs, to become security for the prosecution of a suit in the Circuit Court of Greene County, complainant placed in his hands the note as indemnity, taking the following receipt, viz:
“Received of Wm. C. Scruggs of John, a note on William Luster for seven hundred and forty-three dollars and five cents, due 2d January, 1861, bearing interest at .ten per cent., and which note is placed in my hands to make me safe for going his and John Scruggs’ security in a suit Sarah Cook against J. R. Cook and Allen Barker, now in the Circuit Court of Greene County, Tenn. Now, if I; Abijah Scruggs, my heirs or executors, should have to pay any costs, it is to come out of this note, and if I have none to pay, then I am to return or account to said Wm. Scruggs of John, for this note and interest.
Signed, Abijah Sceuggs.”
“Attest: — W. C. Maloney.”
On the first day of January, 1862, Abijah delivered to his co-defendant, Luster, the note at ten per cent., and took a new note for eight hundred and seventeen dollars *153 and thirty-five cents, payable to complainant. After-wards, and while complainant was in the Federal army, defendant, Abijah, collected of Luster the amount of the second note in Confederate money, and delivered the note to Luster.
The original note was given for purchase money of land.
The bill, which is not sworn to, is filed for the purpose of requiring the defendant to account for one of the notes, prays for general relief, and alleges that the renewal note was taken without the knowledge or consent of complainant.
The answer of Abijah, which is sworn to, very positively denies this allegation, and in response thereto, says: “Upon this occasion, the complainant came with defendant Luster to this respondent, and said they had agreed to make the alteration in the note.”
The answer of Luster which is sworn' to, says, “That he heard that Abijah Scruggs was liable in some way as the security of William Scruggs, or some one else, and that the note was to indemnify him from loss.”
The question raised in argument upon the allegation of the bill that the note was renewed without the knowledge or consent of complainant, and the denial by the answer of Abijah Scruggs and his statement, that complainant was present and consented, the question being on the one side, that complainant is estopped by liis bill, and on the other, that such allegation is merely the suggestion or dictum of counsel, is unnecessary for our discussion or determination, in order that we may arrive *154 at a correct conclusion in this case. There are several other questions which are clécisive upon the merits.
1st. There was even behind and away from either of the notes mentioned in the pleadings, an indebtedness from the defendant Luster, to complainant, based upon a valuable consideration, and we hold the law to be that, although the first or ten per cent, note was void under the Act of 21st of February, 1860, complainant might have, all other questions being out of the way, instituted his action of debt or indebitatus assumpsit, disregarding the note, and have recovered the amount agreed to be paid for the land.
2nd. The note was placed in the hands of defendant for a particular purpose, viz: to indemnify him as security for costs.
But, supposing the defendant had received the note, with authority to collect the amount due, and, in discharge of that undertaking had collected Confederate money, the principal would not be bound by his action, nor would the debtor be released.
An agent for collection has no right to receive in payment of his principals debt, any thing but money. Cooney v. Wade, 4 Hum., 445; Kenney v. Hazeltine Haddock & Co., 6 Hum, 62.
At the time of the transaction, making the facts and history of this case, nothing but gold and silver was money. Even convertible bank paper, when tendered in payment of debts and objected to upon the grounds that it was not money, was rejected by the law as no tender. Confederate notes were not convertible bank notes, were never made, by the Confederate Government *155 even, a legal tender; and, in fact, never became due, their maturity being fixed at the time of a ratification of treaty of peace between the Confederate States and the United States.
3d. Defendant Luster knew that his co-defendant Abijah, held his note to complainant to indemnify him as security, at least by the terms of his answer. He had heard so, and without positive knowledge of the fact, the information he had received was sufficient to put him upon inquiry as to the character of Abijah’s holding. He elected not to inquire, but gave his second note, payable to complainant at six per cent., in renewal of the first or ten per cent, note, to Abijah, and after-wards paid off said latter note in Confederate money to Abijah, and took up the note from Abijah in the absence of complainant, and after the liability of Abijah on the prosecution bond had ceased.
This is a proper case for account, and the demurrer was rightly overruled. Complication and embarrassment to the rights of the parties have grown out of the transactions between the defendants Luster and Abijah Scruggs.
The transaction between the defendants, Abijah and Luster, in the passing and receipt of the Confederate notes, was an ordinary one, and not intended to further the rebellion. We, therefore, following the decision of the Supreme Court of the United States in the case of Thorington v. Smith, 8 Wallace, p. 1, hold that Confederate money had a value in the States in rebellion and under Confederate rule; that out of the receipt of the Confederate money by Abijah Scruggs, from defendant Luster, grows an implied undertaking upon the part of *156 Abijah Scruggs, to account to defendant, Luster, for the value of the Confederate money" so by him received, and that he is responsible to Luster for the value of the Confederate • money at the time of its receipt, with interest.
We also hold that Abijah Scruggs and William Luster must pay to complainant the amount of the second note with interest less the usury of four per cent, embraced in the renewal. In other words that they pay to complainant the sum originally agreed to be paid for the land, which is seven hundred and forty three dollars and five cents, and the legal interest thereon, from its maturity; Luster being first liable, and in case of his failure, then Abijah. Defendant Abijah, by his breach of trust and violation of the conditions upon which he held the note in converting it to his own use, made himself responsible.
A decree will be entered by this Court for the debt and interest due complainant. The cause is remanded to the Chancery Court at Greeneville, that an account may be taken of the value of the Confederate money upon the principles of this opinion. The defendants will pay the costs of this Court and of the Court below.